2005-NMCA-143

125 P.3d 1175

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Stanley Bryant HILL, Defendant–Appellee.**

No. 24,727.

Court of Appeals of New Mexico.

Oct. 31, 2005.

Certiorari Denied, No. 29,549, Dec. 12, 2005.

694

Patricia A. Madrid, Attorney General, Santa Fe, NM, Joel Jacobsen, Assistant Attorney General, Albuquerque, NM, for Appellant.

John Bigelow, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

## OPINION

WECHSLER, Judge.

{1} This case began in January 1989 when the State filed a complaint in magistrate court charging Defendant Stanley Bryant Hill with two counts of criminal sexual penetration of a minor under the age of thirteen (CSPM) for acts allegedly occurring in 1988 and 1989. The case was dismissed later that year. The State refiled the charges in 2002. The district court dismissed the charges based on speedy trial and due process grounds. The State appeals the district court's order, contending that the district court erred in granting Defendant's motion to dismiss because (1) the time during which charges were not pending should not be counted in calculating the period of delay for speedy trial purposes; (2) the district court's order dismissing the charges was legally in-adequate because the order does not identify a due process violation; and (3) even assuming that the district court made the requisite findings to dismiss the case, those findings are unsupported by the record. Defendant's right to a speedy trial did not apply when no charges were pending. Because Defendant does not assert that the State obtained a tactical advantage by destroying evidence, Defendant's due process claim concerning the destruction of evidence must be tested under *State v. Chouinard*, 96 N.M. 658, 661, 634 P.2d 680, 683 (1981). We reverse the district court's order dismissing the charges. We remand for the district court to select a remedy that is appropriate regarding the lost evidence based on *Chouinard.*

## FACTUAL AND PROCEDURAL BACKGROUND

{2} The 1989 complaint alleged that Defendant had put his penis in the mouth of his five-year-old niece. During the investigation, the niece had a medical examination and was diagnosed with gonorrhea of the mouth and throat, evidence that supported the allegations of sexual penetration. Defendant was also tested for gonorrhea during the investigation, and the results were negative.

{3} At the time of two preliminary hearings in 1989, the niece was six years old and was unable to testify in court because she was apparently traumatized by the alleged incidents of abuse or frightened by the courtroom procedures. In addition, a physician failed to honor a subpoena to testify for the State. Presumably, the physician would have testified about the diagnosis of the niece's gonorrhea. Further, during the course of the 1989 investigation, Defendant took a polygraph test. At the conclusion of the test, the administering detective told Defendant that the results indicated deception, and Defendant allegedly confessed his guilt to the detective. This confession was recorded. The magistrate ruled, however, that the confession was inadmissible. Without the victim's or the physician's testimony, and without Defendant's alleged confession, the State dismissed the charges in July 1989.

{4} The interested parties knew that the case was dismissed in 1989. Defendant was present at both preliminary hearings. An

August 1989 supplemental sheriff's report stated that the charges against Defendant were dismissed. An August 1989 district attorney's case disposition report directed to the records custodian of the sheriff's department stated that the case was dismissed prior to trial because the magistrate had found no probable cause at preliminary hearings. In addition, the assistant district attorney prosecuting the case wrote a letter in August 1989 to a sergeant who was listed as a witness. The letter advised the sergeant that the case was dismissed due to lack of probable cause and that it was not necessary for him to appear as a witness for the State. The niece and her family moved to Arkansas, and they did not pursue the case. Defendant was not further investigated or contacted about the charges; the State did not further prosecute until 2002.

{5} On November 5, 2002, in the course of an investigation of an unrelated report of sexual abuse that also implicated Defendant, Detective Kenneth Weisheit was introduced to a nineteen-year-old woman. The woman accompanied the victim of the reported sexual abuse to an interview. She advised Detective Weisheit that she was Defendant's niece and that she had been sexually abused by Defendant when she was five years old. She stated that she was able to remember the sexual abuse and wanted to pursue the charges against Defendant.

{6} After this information came to light, on November 15, 2002, the State charged Defendant with two counts of CSPM in the first degree for the alleged conduct involving the niece that had occurred in 1988 and 1989. Sometime before 2002, however, the district attorney's file and the magistrate court file were destroyed in accordance with the applicable regulations regarding the retention and disposal of evidence on closed cases. The sheriff's department file was partially preserved. Certain items that should have been contained in it, however, including some medical records, Defendant's tape-recorded confession, and Defendant's polygraph interviews and results, had been destroyed. Defendant filed motions to dismiss the 2002 charges with prejudice.

{7} In the motion to dismiss for denial of due process, Defendant argued that during the thirteen-year interval, the State destroyed, lost, or failed to preserve evidence material to his innocence and defense and that the intentional deprivation of such evidence prejudiced him. In the motion to dismiss for denial of speedy trial, Defendant argued that his right to a speedy trial was triggered by his arrest on the original charges in January 1989. Defendant maintained that he was "severely prejudiced by the [approximately thirteen-year] delay … because during the lengthy delay files, records, and evidence, all necessary for his defense, have been destroyed."

{8} The district court held an evidentiary hearing on Defendant's motions to dismiss. It granted Defendant's motion to dismiss for denial of speedy trial, finding that Defendant's speedy trial right began to run, pursuant to *Salandre v. State*, 111 N.M. 422, 806 P.2d 562 (1991), when Defendant was arrested and charged with CSPM on the original complaint, approximately thirteen years earlier on January 24, 1989. In addition, the district court granted the motion to dismiss for denial of due process, finding that due to the loss and destruction of evidence, Defendant was prejudiced by the State's actions.

## DISMISSAL FOR VIOLATION OF RIGHT TO SPEEDY TRIAL

{9} Defendant contends that his speedy trial right attached in 1989 when he was originally arrested and charged with CSPM. He does not complain about any delay since the 2002 charges, but argues that the approximately thirteen-year delay between the initial dismissal and the refiling of the charges, with no continuing investigation on the part of the State, violated his right to a speedy trial. Defendant also maintains that the district court correctly dismissed the charges against him, because, during the delay, the State destroyed exculpatory evidence, prejudicing his defense. The State contends that Defendant's right to a speedy trial attached in November 2002, when he was arrested and charged. It argues that the period during which charges were not pending against Defendant, from approximately July 1989 to November 2002, should

not be included in the calculation for the delay for speedy trial purposes. On appeal in a speedy trial claim, "we [defer] to the district court's fact finding" and determine from our review of the record whether the district court's ruling is supported by the law. *See State v. Plouse,* 2003–NMCA–048, ¶ 34, 133 N.M. 495, 64 P.3d 522; *see also State v. Urban,* 2004–NMSC–007, ¶ 11, 135 N.M. 279, 87 P.3d 1061; *State v. Coffin,* 1999–NMSC–038, ¶ 58, 128 N.M. 192, 991 P.2d 477; *State v. Manzanares,* 1996–NMSC–028, ¶ 1, 121 N.M. 798, 918 P.2d 714.

{10} The parties' arguments address the Sixth Amendment mandate that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. As our Supreme Court noted in *Salandre,* 111 N.M. at 425, 806 P.2d at 565, the speedy trial right attaches "when the putative defendant becomes an 'accused,' " either at the time of a formal indictment or information or at time of the actual restraint imposed by arrest and the requirement to answer a criminal charge. *See id.* at 426, 806 P.2d at 566; *United States v. Marion,* 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

{11} The United States Supreme Court explained the difference in focus between the speedy trial clause of the Sixth Amendment and the due process clause of the Fifth Amendment in *United States v. MacDonald,* 456 U.S. 1, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982). In that case, military charges for three murders had been brought against the defendant and were dismissed after a lengthy hearing. *Id.* at 4–5, 102 S.Ct. 1497. The investigation continued, and, more than four years after the dismissal, a federal grand jury indicted the defendant, charging him with the three murders. *Id.* at 5, 102 S.Ct. 1497. The Court held that, like the period before indictment and arrest, the right to a speedy trial does not attach after charges are dismissed in good faith. *Id.* at 7, 102 S.Ct. 1497. The Court differentiated between due process and speedy trial rights by noting that the due process clause, not the Sixth Amendment, applies to delay prior to arrest or indictment, including, under the constitution, "prejudice to the defense caused by

passage of time." *Id.* at 8, 102 S.Ct. 1497. The Court discussed that the right to a speedy trial, on the other hand, "is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *Id.* The Court discerned that when charges are dismissed, "any restraint on liberty, disruption of employment, strain on financial resources, and exposure to public obloquy, stress and anxiety is no greater than it is upon anyone openly subject to a criminal investigation." *Id.* at 9, 102 S.Ct. 1497. As a consequence, according to the Court, when "charges are dismissed, the speedy trial guarantee is no longer applicable." *Id.* at 8, 102 S.Ct. 1497. It held that the right to a speedy trial did not apply to the period in which no charges were pending against the defendant. *Id.* at 9–10, 102 S.Ct. 1497.

{12} Our appellate courts have followed the United States Supreme Court's holding in *MacDonald.* In *State v. McCrary,* 100 N.M. 671, 675, 675 P.2d 120, 124 (1984), the state filed nolle prosequis, the defendants were released from custody without prejudice, and the state subsequently reinstated charges. Our Supreme Court held that "once charges are dropped in good faith, the delay is not scrutinized by the speedy trial clause of the Sixth Amendment of the federal constitution." *Id.* Likewise, in *State v. Jacquez,* 119 N.M. 127, 130, 888 P.2d 1009, 1012 (Ct.App.1994), this Court did not consider the time during which charges were dismissed by the state in good faith. The defendant was free of restrictions on his liberty after a magistrate judge had dismissed the charges for lack of probable cause until he was arrested on a bench warrant issued by a district judge based on an amended complaint. *Id.* at 130–31, 888 P.2d at 1012–13; *see State v. Sanchez,* 108 N.M. 206, 207, 769 P.2d 1297, 1298 (Ct.App.1989) (holding that the speedy trial right does not attach upon arrest when the defendant has been arrested, released without restriction, and charged nineteen months later).

{13} In this case, there is no allegation that the State exhibited bad faith when the charges were dismissed in 1989. *See Mac-Donald*, 456 U.S. at 7, 102 S.Ct. 1497 (limiting the holding that once charges are dismissed, the speedy trial guarantee is no longer applicable to a speedy trial claim under the Sixth Amendment to the United States Constitution when "the Government, acting in good faith, formally drops charges" and subsequently reindicts). The 1989 charges were dismissed for lack of probable cause. In addition, in the interval between when the charges against Defendant were dismissed in 1989 and the subsequent arrest on the same charges in 2002, Defendant was not in custody for the 1989 charges. In fact, the case had not been pursued or investigated by the State since it was dismissed in 1989. Although this interval is lengthy, the period of time does not alter our analysis because of the purpose of right to a speedy trial. As stated above, Defendant knew that the 1989 charges were dismissed, and he does not present evidence that his liberty was impaired after the 1989 charges were dismissed.

{14} On appeal, Defendant argues that he "suffered anxiety and concern over the outcome of these charges for the entire time until ... the trial court dismissed the pending case on February 10, 2004, a delay of fifteen years." However, Defendant testified at the hearing on the motions to dismiss that he was told that the 1989 case was dismissed and he thought he would not have to worry about the case being brought back against him. Again, Defendant was not questioned, contacted, or held on the 1989 charges after they were dismissed in 1989 until his arrest in 2002. Defendant also argues that *Mac-Donald*, *McCrary*, and *Jacquez* are distinguishable because, in those cases, the government was actively investigating whereas, in this case, the State did nothing during the period in which charges were not pending. We do not understand how this distinction would make a difference, except perhaps by making this case even less persuasive as one involving a speedy trial violation. If the point of the speedy trial guarantee is to minimize the disruption to a defendant's personal interests caused by pending charges, a case the government had completely dropped would present less of a speedy trial violation, rather than a greater violation.

{15} The right to a speedy trial based on the 1989 complaint did not run from 1989 to 2002 because Defendant was not an "accused" and knew he was not an accused during the approximately thirteen-year interval when no CSPM charges were pending against him. *See id.* Therefore, the district court erred in determining that Defendant's speedy trial right was violated. Defendant's speedy trial right for this case did not attach until 2002. Defendant does not argue that his speedy trial right was violated with regard to the 2002 indictment. Thus, we need not conduct a speedy trial analysis using the *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), framework that governs speedy trial claims.

## DISMISSAL FOR LACK OF DUE PROCESS FOR DELAY AND DESTRUCTION OF EVIDENCE

■ {16} In addition to the dismissal for a speedy trial violation, the district court also dismissed Defendant's case on due process grounds. Defendant essentially contends that the delay, coupled with the State's intentional destruction of evidence, denied him due process. We analyze the dismissal of criminal charges on due process grounds under a de novo standard, deferring to the district court's findings of fact when they are supported by substantial evidence. *See State v. Gonzales*, 2002–NMCA–071, ¶ 10, 132 N.M. 420, 49 P.3d 681; *State v. Armijo*, 118 N.M. 802, 811, 887 P.2d 1269, 1278 (Ct.App.1994) (reviewing dismissal for prosecutorial misconduct under a de novo standard). As stated in *MacDonald*, "[t]he Sixth Amendment right to a speedy trial is ... not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations." *MacDonald*, 456 U.S. at 8, 102 S.Ct. 1497.

■ {17} Statutes of limitations provide the primary protection based strictly on the passage of time. "[T]he due process clause of the [F]ifth [A]mendment provides additional, albeit limited, protection against im-

proper preaccusation delay." *Gonzales v. State,* 111 N.M. 363, 364, 805 P.2d 630, 631 (1991). It requires dismissal when a defendant proves "prejudice and an intentional delay by the state to gain a tactical advantage." *Id.* at 365, 805 P.2d at 632. If a defendant "makes a prima facie showing of prejudice and that the state knew or should have known delay was working a tactical disadvantage on [the] defendant, then the burden of production shifts to the prosecution to articulate a legitimate reason for the delay." *Id.* at 366, 805 P.2d at 633. "Otherwise, the state is entitled to the preindictment period that the legislature, as a matter of public policy, has enunciated in the applicable statute of limitations." *Id.* at 365–66, 805 P.2d at 632–33.

{18} The State alleges that Defendant committed CSPM between September and December of 1988 and in January of 1989. Therefore, as the State acknowledges, and Defendant does not dispute, the applicable statute of limitations at the time Defendant allegedly committed CSPM is fifteen years. *See* NMSA 1978, § 30–9–11(A)(1) (1987) (classifying CSPM as a first degree felony); *see also* NMSA 1978, § 30–1–8(B) (1980) (stating that the statute of limitations for first degree felony is "fifteen years from the time the crime was committed"); *cf. State v. Norush,* 97 N.M. 660, 662, 642 P.2d 1119, 1121 (Ct.App.1982) (noting prohibitions to removing defenses available at the time the act was committed). There is no statute of limitations issue in this case because the State filed its criminal information charging Defendant with CSPM on December 9, 2002.

■ {19} We therefore focus our analysis on the district court's dismissal for preaccusation delay and destruction of evidence. As to this basis for dismissal, Defendant does not point to evidence of intentional delay by the State to gain a tactical advantage. The State did not pursue the case in 1989, because, at that time, it lacked the evidence to go forward with the case. Now, it has such evidence. The niece who, in 1989, was a young child victim and apparently too traumatized to testify, has voluntarily come forward to testify. There is no evidence that the State intended the delay to work a tacti-

cal disadvantage on Defendant or that the State knew or should have known that the delay would cause any specific tactical disadvantage to Defendant. Defendant asserts that "the [S]tate has a clear tactical advantage because the [S]tate destroyed the exculpatory evidence in its possession and then the prosecutor re-filed the charge." But Defendant does not assert that the State improperly obtained such a tactical advantage. Dismissal is therefore not warranted on this basis.

■ {20} Destruction of evidence can also result in a denial of due process. New Mexico has adopted a three-part test to determine whether deprivation of evidence violates a criminal defendant's right to due process and requires suppression of the evidence. *Chouinard,* 96 N.M. at 661, 634 P.2d at 683. With regard to each item of evidence, the district court must determine whether:

1) The State either breached some duty or intentionally deprived the defendant of evidence;

2) The improperly "suppressed" evidence [was] material; and

3) The suppression of [the] evidence prejudiced the defendant.

*Id.* (quoting *State v. Lovato,* 94 N.M. 780, 782, 617 P.2d 169, 171 (Ct.App.1980)). Moreover, the defendant must show materiality and prejudice if the State demonstrates that it did not act in bad faith. *Chouinard,* 96 N.M. at 663, 634 P.2d at 685.

{21} *Chouinard* provides the two possible options available to the district court when the loss or destruction of evidence is known prior to trial. The district court can either exclude "all evidence which the lost evidence might have impeached" or admit the evidence "with full disclosure of the loss and its relevance and import." *Id.* at 662, 634 P.2d at 684. "The fundamental interest at stake is assurance that justice is done, both to the defendant and to the public." *Id.* In selecting its option, the district court must analyze the materiality of the evidence and the prejudice to the defendant to reach a just decision. *Id.*

{22} The district court's order does not reflect that it applied the *Chouinard* three-

part test. The district court found that the State made no effort to preserve evidence, pursue this case, or show that it intended to bring charges against Defendant once they were dismissed for lack of probable cause in 1989. The order concludes, as required by *Chouinard,* that the State's actions prejudiced Defendant. However, the order does not explicitly decide that the State breached some duty or intentionally deprived Defendant of material evidence, as required under the three-part test in *Chouinard. Id.* at 661, 634 P.2d at 683. *Chouinard* was not properly applied to this case, and dismissal was not proper.

 {23} Even if the findings required by *Chouinard* had been made, the proper remedy would have been one of the remedies set forth in *Chouinard.* Dismissal is not a proper remedy without a showing that the defendant "will be deprived of a fair trial if . . . tried without the missing evidence." *State v. Bartlett,* 109 N.M. 679, 680–81, 789 P.2d 627, 628–29 (Ct.App.1990) (stating that, in a discovery sanctions case, "dismissal is an extreme sanction to be used only in exceptional cases"). The district court did not specifically find that Defendant would be deprived of a fair trial on the 2002 charges without the destroyed evidence. Accordingly, we reverse the district court's order dismissing the case and remand for trial, including, on remand, application of the *Chouinard* test to each item of evidence that is missing or destroyed.

## CONCLUSION

{24} Based on the foregoing, we reverse the district court's order dismissing Defendant's charges and remand for the district court to apply the *Chouinard* three-part test and select the appropriate remedy, because dismissal was not an option in this case.

{25} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and CYNTHIA A. FRY, Judges.