2008-NMCA-117

192 P.3d 770

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Stanley Bryant HILL, Defendant–
Appellant.**

**No. 27,401.**

Court of Appeals of New Mexico.

July 10, 2008.

Certiorari Granted, No. 31,265,
Aug. 25, 2008.

Gary K. King, Attorney General, Santa Fe, NM, James W. Grayson, Assistant Attorney General, Albuquerque, NM, for Appellee.

John Bigelow, Chief Public Defender, Navin H. Jayaram, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} This appeal arises following a jury verdict finding Defendant Stanley Bryant Hill guilty of one count of criminal sexual penetration. Defendant's appeal requires us to consider whether NMSA 1978, § 30–1–9(B) (1963), bars the State from prosecuting charges that were filed and dismissed in 1989. We conclude that Section 30–1–9 is a tolling statute, rather than a statute of limitations, and that it does not independently limit the time period within which prosecution must commence. We also address *State v. Chouinard*, 96 N.M. 658, 634 P.2d 680 (1981), and the district court's ability to fashion a case-specific remedy in the event that the state has lost or destroyed evidence. We conclude that the district court did not abuse its discretion when it conditionally excluded testimony regarding the substance of a lost tape recording of Defendant's alleged confession. We further conclude that the district court did not abuse its discretion when it denied Defendant's motion for a continuance and that the admission of certain witness testimony was not plain error. We therefore affirm the jury's verdict, as well as the contested rulings of the district court.

## BACKGROUND

{2} In 1989, Defendant was charged with two counts of criminal sexual penetration. At the preliminary hearing, the six-year-old victim was unable to testify, and no other witnesses were available to testify. The magistrate court found no probable cause and dismissed the charges on July 3, 1989. Roughly thirteen years later, the victim came forward and indicated that she was willing to testify against Defendant for the same crimes that he was accused of committing in the 1989 charges. As a result, in 2002, Defendant was recharged with two counts of criminal sexual penetration, contrary to NMSA 1978, § 30–9–11(C)(1) (1987) (amended 2007). Because of the passage of time, some of the evidence that was gathered to prosecute the original charges against Defendant had been lost or destroyed, including documentation of a polygraph exam, recordings of an interview during which Defendant allegedly confessed, and medical records pertaining to sexually transmitted diseases.

{3} Defendant filed three motions to dismiss the charges. The district court ultimately dismissed the charges based on Defendant's arguments that (1) the State's loss or failure to preserve the evidence resulted in a due process violation and (2) Defendant was denied his right to a speedy trial. The State appealed, and this Court reversed the district court's decision. *State v. Hill*, 2005–NMCA–143, ¶ 24, 138 N.M. 693, 125 P.3d 1175. In doing so, this Court remanded the case to the district court and directed it to fashion a remedy for the loss or failure to preserve evidence that was consistent with *Chouinard*. *Hill*, 2005–NMCA–143, ¶¶ 23–24, 138 N.M. 693, 125 P.3d 1175.

{4} Defendant's case was finally brought to trial in October 2006. After Defendant presented his case to the jury, the district court directed a verdict in his favor on one count, but the jury found him guilty on the other count. Defendant subsequently appealed to this Court.

{5} On this appeal, Defendant argues that (1) Section 30–1–9(B) operates as a statute of limitations and serves to prevent the State from filing charges for the second time more

than five years after the alleged crime was committed, (2) the district court erroneously applied *Chouinard* to allow for the conditional exclusion of lost evidence, (3) the district court improperly denied Defendant's motion for a continuance, and (4) the district court committed plain error by allowing a lay witness to testify about "irrelevant information" that was "outside of her personal knowledge." We address each argument in turn.

## STATUTORY TOLLING PROVISION

{6} Section 30–1–9(B)(4) is a tolling provision that provides that if a

> prosecution is dismissed because of variance between the allegations of the indictment, information or complaint and the evidence; and a new indictment, information or complaint is thereafter presented, the time elapsing between the preferring of the first indictment, information or complaint and the subsequent indictment, information or complaint shall not be included in computing the period limited for the prosecution of the crime last charged.

The "period limited for the prosecution of the crime last charged" is tolled only if "the crime last charged is based upon and grows out of the same transaction upon which the original indictment, information or complaint was founded, and the subsequent indictment, information or complaint is brought within five years from the date of the alleged commission of the original crime." *Id.* Defendant argues that Section 30–1–9(B)(4) imposes a time limitation of five years for the prosecution of any and all crimes if the prosecution is commenced, dismissed, and then refiled. In response, the State contends that Section 30–1–9(B) is merely a tolling exception to NMSA 1978, § 30–1–8 (1980) (amended 2005), which is the statutory provision that sets the time limitations for commencing a prosecution.

{7} Defendant acknowledges that this issue was not preserved for our review but argues that the correct application of Section 30–1–9(B) is a matter of fundamental rights and general public interest. We agree that the application of a statute of limitations is a question that need not be preserved in order for this Court to consider it on appeal. *See State v. Kerby,* 2007–NMSC–014, ¶¶ 3, 10, 20,

141 N.M. 413, 156 P.3d 704. Our Supreme Court has stated that a "statute of limitations is a substantive right," *id.* ¶ 3, and has permitted a defendant to raise an issue regarding a statute of limitations for the first time on appeal. *Id.* ¶¶ 3, 10, 20. In considering the applicability of a statute of limitations, we determine whether the district court correctly applied the law to the facts. *Id.* ¶ 11. Defendant does not dispute the facts relevant to his statute of limitations argument, and we therefore review this issue de novo. *See id.* Additionally, we interpret statutory language de novo. *State v. McClaugherty,* 2007–NMCA–041, ¶ 30, 141 N.M. 468, 157 P.3d 33, *cert. granted,* 2007–NMCERT–004, 141 N.M. 569, 158 P.3d 459.

{8} In Defendant's case, the applicable statute of limitations period was fifteen years from the time the crimes were allegedly committed because he was charged with first degree felonies. Section 30–1–8(B); *Hill,* 2005–NMCA–143, ¶ 18, 138 N.M. 693, 125 P.3d 1175. The 2002 charges against Defendant were filed on December 9, 2002, and those charges were based on events that took place between September 1988 and January 1989. As a result, the 2002 charges were filed within the applicable statute of limitations period of fifteen years. Defendant argues, however, that the legislature intended for Section 30–1–9(B) to act as a limitations period that is independent of the period set forth in Section 30–1–8 if charges are filed and then dismissed. We disagree.

{9} "When a statute's meaning is clear from its plain language, we must apply the statute as written by the Legislature." *Blancett v. Dial Oil Co.,* 2008–NMSC–011, ¶ 11, 143 N.M. 368, 176 P.3d 1100. After considering the distinction between a tolling statute and a statute of limitations, it becomes apparent that the legislature intended for Section 30–1–9 to operate as a tolling statute. A "statute of limitations" is defined as "[a] law that bars claims after a specified period," *Black's Law Dictionary* 1450 (8th ed.2004), and a "tolling statute" is "[a] law that interrupts the running of a statute of limitations in certain situations." *Id.* at 1525. Section 30–1–9(B)(4) states that "the time elapsing between the preferring of the first

indictment ... and the subsequent indictment ... shall not be included in computing the period limited for the prosecution of the crime last charged." This plain language demonstrates that the legislature intended for the statute to interrupt the running of a statute of limitations period and not for it to bar a claim after a specific period of time.

{10} This Court has previously interpreted the language included in Section 30–1–9, which at that time was codified at NMSA 1953, § 40A–1–9 (1963). *See State v. Martinez,* 92 N.M. 291, 293–94, 587 P.2d 438, 440–41 (Ct.App.1978). In *Martinez,* a complaint was filed in magistrate court within the statute of limitations period, but the indictment was not returned until after the period had run. *Id.* at 292, 587 P.2d at 439. This Court first concluded that the indictment was not returned within the statute of limitations period set forth in NMSA 1953, § 40A–1–8 (1963), which is currently codified at Section 30–1–8. *Martinez,* 92 N.M. at 292–93, 587 P.2d at 439–40. After that determination, we stated that Section 40A–1–9 "covers specific instances when the limitation period is tolled." *Martinez,* 92 N.M. at 293, 587 P.2d at 440. As a result, we explained that although the limitations period under Section 40A–1–8 had expired, "the indictment was timely because the limitation period was tolled by the filing of the complaint." *Martinez,* 92 N.M. at 293, 587 P.2d at 440. Accordingly, Section 40A–1–9 operated to toll the limitations period under Section 40A–1–8. *See Martinez,* 92 N.M. at 293, 587 P.2d at 440. In the present case, Section 30–1–9(B)(4) does not serve to preclude the State from prosecuting the charges against Defendant. On the contrary, the State does not have to use Section 30–1–9(B)(4) to toll the limitations period because the 2002 charges were filed within the fifteen years established by Section 30–1–8(B).

{11} The defendant in *Martinez* also argued that the application of the tolling provision to a complaint that had been voluntarily dismissed would operate to toll the limitations period indefinitely. *Martinez,* 92 N.M. at 294, 587 P.2d at 441. This Court disagreed and explained that a later prosecution could be dismissed if the delay caused significant prejudice to the defendant. *Id.* Defendant, in the present case, thus argues that the refiling of the charges in his case is significantly prejudicial because too much time has elapsed. We disagree. The State brought charges against Defendant within the fifteen years contemplated by the legislature in Section 30–1–8(B). Therefore, the period of delay was not, on its own, sufficiently prejudicial to warrant a dismissal of Defendant's case.

## LOST OR DESTROYED EVIDENCE

{12} In criminal cases, "the Government plainly has the obligation to make available to the defense evidentiary material in its possession which is disclosable," *Chouinard,* 96 N.M. at 660, 634 P.2d at 682 (internal quotation marks and citation omitted), and the "[d]estruction of evidence can ... result in a denial of due process." *Hill,* 2005–NMCA–143, ¶ 20, 138 N.M. 693, 125 P.3d 1175. In *Chouinard,* our Supreme Court explained the three-part test that we must use to determine whether the state's deprivation of evidence constitutes reversible error. *Chouinard,* 96 N.M. at 661, 634 P.2d at 683. We consider whether (1) the state breached its duty to preserve the evidence or intentionally deprived the defendant of it, (2) the evidence was material, and (3) the suppression or loss of the evidence prejudiced the defendant. *Id.* When a district court makes findings that satisfy the test prior to trial, *Chouinard* provides two alternative remedies—(1) the "[e]xclusion of all evidence which the lost evidence might have impeached" or (2) the "admission with full disclosure of the loss and its relevance and import." *Id.* at 662, 634 P.2d at 684. "In selecting its option, the district court must analyze the materiality of the evidence and the prejudice to the defendant to reach a just decision." *Hill,* 2005–NMCA–143, ¶ 21, 138 N.M. 693, 125 P.3d 1175.

{13} In this case, the State proposed to offer evidence of a confession that Defendant allegedly made to a police officer in 1989. The recording of the alleged confession was lost, but the State indicated that the officer who took the confession would testify based on his personal knowledge of the conversation. Ul-

timately, the district court ordered that the "case will go to trial ... without mention of any purported confession unless [Defendant] takes the stand at which point the [S]tate could call the deputy in rebuttal with the disclosure that the tape of the interview has been destroyed." Defendant argues that such a remedy was improper because the alternative remedies outlined in *Chouinard* are exclusive and that the district court was therefore not permitted to fashion a "hybrid standard that allows lost evidence to be brought in if the defendant testifies." We review a district court's remedy for lost evidence for an abuse of discretion. *See State v. Duarte*, 2007–NMCA–012, ¶¶ 5, 11, 140 N.M. 930, 149 P.3d 1027. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* ¶ 3 (internal quotation marks and citation omitted).

{14} The two options presented in *Chouinard* are either (1) to allow the admission of the evidence that the lost evidence might have impeached with full disclosure or (2) to completely exclude that evidence. *Chouinard*, 96 N.M. at 662, 634 P.2d at 684. Defendant's reading of *Chouinard* is too narrow because it does not take into account the fundamental interest at stake—the "assurance that justice is done, both to the defendant and to the public." *Id.* The district court did not create a remedy without regard for *Chouinard*; it elected to exclude the evidence completely—the *Chouinard* remedy that provided the greatest relief to Defendant. In the event that Defendant testified, however, the district court further ensured that any rebuttal testimony regarding the alleged confession remained subject to the limitation on admission found in *Chouinard* by ruling that the State would then have to provide full disclosure of the circumstances of the loss of the tape recording. The remedy therefore does not deviate from *Chouinard*.

{15} Along similar lines, *Chouinard* requires the district court to consider, on a case-by-case basis, the materiality of the evidence and the prejudice to a defendant when the court selects a remedy to impose upon the state. *Id.* at 663, 634 P.2d at 685. The

district court determined that the evidence was material and that the loss of the evidence prejudiced Defendant. The district court heard argument that without the tape recording, Defendant could not impeach the officer's testimony regarding the alleged confession. As a result, the district court ruled that the evidence of the lost confession "should not be introduced at the trial unless and until [Defendant] takes the stand in which case the jury should be told of the loss of that evidence." Essentially, if Defendant chose to testify, the materiality and prejudice inquiry would have been altered because the State would then be permitted to impeach Defendant's expected testimony that he never confessed with his alleged prior statement. *See State v. Gibbins*, 110 N.M. 408, 411, 796 P.2d 1104, 1107 (Ct.App.1990) (observing that the state may use a prior inconsistent statement in order to impeach a defendant's testimony). After hearing these arguments, the district court considered the competing interests of the State and Defendant and fashioned a remedy that included the restrictions on admission and exclusion that are outlined in *Chouinard*. The district court did not deviate from the *Chouinard* framework; rather, it applied *Chouinard* in a flexible manner without losing sight of the interests of either Defendant or the public. The district court's remedy was therefore a reasonable and proper application of *Chouinard*.

■ {16} Defendant also argues that the district court's application of *Chouinard* violated Defendant's state and federal constitutional rights to be free from self-incrimination. Specifically, Defendant contends that the specter of the officer's testimony regarding the confession prevented him from testifying. However, Defendant did not argue to the district court that conditionally admitting the evidence of the alleged confession would effectively prevent him from testifying. On the contrary, Defendant's counsel explained at the hearing on the issue that he would not testify because he was concerned about his prior felony convictions. As a result, Defendant did not present the district court with the opportunity to rule on the issue that he now raises on appeal. He therefore did not preserve his constitutional claims for our review, and we will not address them in this

opinion. *See State v. Sosa,* 122 N.M. 446, 448, 926 P.2d 299, 301 (1996) ("We will not reverse the district court on a matter so uniquely within its discretion [(a Fifth Amendment issue)] when the court was not given an opportunity to consider the issue and make an appropriate response prior to ruling.").

## MOTION FOR A CONTINUANCE

{17} On the morning of trial, Defendant's counsel made a request to the district court to continue the trial for a day or two because he had been ill for several days. Defendant argues that the district court improperly denied his motion for a continuance and that, as a result, he was denied effective assistance of counsel. Conversely, the State contends that the district court actually granted Defendant's motion for a continuance and that Defendant therefore cannot establish a prima facie case of ineffective assistance of counsel. We agree with the State.

{18} "The grant or denial of a continuance is within the sound discretion of the trial court, and the burden of establishing abuse of discretion rests with the defendant." *State v. Salazar,* 2007–NMSC–004, ¶ 10, 141 N.M. 148, 152 P.3d 135. At a hearing immediately before voir dire, Defendant's counsel indicated that he was not feeling well and had been ill for several days. The district court asked Defendant's counsel what he would have done to prepare over the time that he had been ill, and Defendant's counsel responded that he would have reviewed the jury panels and examined the statements of the witnesses for inconsistencies. The district court proposed that they "select a jury today and have them come back [the following] morning." Defendant's counsel said in response, "That would really help." The district court also permitted Defendant's counsel to take an hour to prepare for jury selection, and Defendant's counsel did not object to that proposed solution. We conclude from this evidence that the district court did not deny Defendant's motion for continuance; instead, it worked with Defendant's counsel to reach an acceptable solution.

{19} Defendant relies heavily on the district court's initial reaction to the statement of Defendant's counsel that he was not well. The district court made the following statements during the hearing:

[W]e got to get this done. This is a bad time because I'm now reading a book about the marine's [sic] charging up Mt. Suribachi at Iwo Jima. So, a stomach ache doesn't sound like much of an excuse. Plus, I was sick at every trial—every jury trial I ever tried.

. . . .

[J]oin the club. I had one trial down in Gallup, first-degree murder case, six days. I never slept. I didn't sleep.

. . . .

We've got a jury here[,] and we're ready to go. You know, I sympathize with you. . . . I've been there. I've been there, honest to God. When I think about every trial I've ever done, I was sicker than a dog before I got to the court. But you just kind of have to sum things up and do them sometimes.

We agree with Defendant that, except for the consideration of the jury's presence and the inconvenience to the court, these are not appropriate reasons for denying a motion for a continuance. *See Salazar,* 2007–NMSC–004, ¶¶ 14–15, 141 N.M. 148, 152 P.3d 135 (outlining the factors that a district court should consider in ruling on a motion for a continuance). We cannot escape the conclusion, however, that despite these comments, the district court did not deny Defendant's motion. Instead, the court allowed defense counsel more time to prepare for jury selection and more time to review the witness testimony. We therefore hold that the district court did not abuse its discretion.

## WITNESS TESTIMONY

{20} Rule 11–602 NMRA prevents a witness from testifying "to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Additionally, Rule 11–701(A) NMRA permits a lay witness to testify as to his or her opinion, provided that the opinion is "rationally based on the perception of the witness." Defendant argues that the testimony of one lay witness, Kathy Barrett, exceeded her personal knowledge of the subject matter and, because the State did not

qualify her as an expert, was improperly admitted. Defendant acknowledges that he did not object to the witness's testimony at trial; however, he contends that the district court's admission of the testimony was plain error. *See* Rule 11–103(D) NMRA. Even assuming that Barrett's testimony was improperly admitted, we conclude that the district court committed no plain error in this case.

{21} Under the plain error rule, "there must be (1) error, that is (2) plain, and (3) that affects substantial rights." *State v. Paiz*, 1999–NMCA–104, ¶ 26, 127 N.M. 776, 987 P.2d 1163; *see also* Rule 11–103(D). In order to conclude that a matter not brought to the attention of the district court constituted plain error, this Court "must be convinced that admission of the testimony constituted an injustice that creates grave doubts concerning the validity of the verdict." *State v. Lucero*, 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993) (internal quotation marks and citation omitted).

{22} Barrett testified that she was a physician's assistant and that during the period relevant to the case, she specialized in diagnosing and treating sexually transmitted infections and diseases. She further testified that "[t]he goal of the Centers for Disease Control ... at that time was ... to enforce mandatory reporting nationwide, and it was estimated that probably one to one and a half million cases nation wide [sic] were not reported." Defendant contends that Barrett was not in a position to obtain personal knowledge about national reporting of sexually transmitted diseases and that her testimony improperly prejudiced Defendant. However, as the State points out in its answer brief, it appears that Defendant, instead of objecting to Barrett's testimony on that ground, chose to cross-examine her on the topic. We construe Defendant's actions to demonstrate acquiescence to the introduction of Barrett's testimony, thereby constituting a waiver of any argument contesting the propriety of the admission of her testimony on appeal. *See State v. Campos*, 1996–NMSC–043, ¶ 47, 122 N.M. 148, 921 P.2d 1266 ("Acquiescence in the admission of evidence, however, constitutes waiver of the issue on appeal."). Accordingly, the plain error doctrine is inapplicable in this case.

**CONCLUSION**

{23} We affirm the contested rulings of the district court, as well as the jury's verdict.

{24} **IT IS SO ORDERED.**

WE CONCUR: CELIA FOY CASTILLO, and MICHAEL E. VIGIL, Judges.