This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                   **NO. 29,860**

**CASEY M.,**

Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Sandra A. Price, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellee

Jacqueline Cooper, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**CASTILLO, Chief Judge.**

Casey M. (Child) was convicted of driving while intoxicated (DWI), driving without a license, and driving without proof of financial responsibility. On appeal, Child challenges only his conviction for DWI under NMSA 1978, Section 66-8-102 (2008) (amended 2010). Child makes three arguments: (1) that he was not properly *Mirandized* and, therefore, his statements were inadmissible; (2) that the district court abused its discretion by allowing testimony about the Drug Recognition Expert (DRE) evaluation; and (3) that the district court violated Child's right to confrontation in admitting a toxicology report into evidence through an analyst other than the one who conducted the test and prepared the report. We affirm the district court as to Child being properly *Mirandized* and as to the admission of testimony about the DRE evaluation. On Child's confrontation issue, we hold that it was error for the district court to admit the toxicology report; however, we hold that this error was harmless, and we therefore uphold Child's DWI conviction.

**BACKGROUND**

Child, who was a juvenile at the time of his adjudication, was charged by delinquency petition on December 24, 2008, with DWI, driving without a license, and driving without proof of financial responsibility for an incident that occurred on August 24, 2008, at a DWI sobriety checkpoint. On the day of the incident, Deputy Richard Marshall approached Child's vehicle at the DWI checkpoint, and Child

exhibited signs of impairment, and he also had bloodshot, watery eyes. Deputy Marshall detected the odor of marijuana coming from the vehicle. The deputy requested Child's license, registration, and insurance. Child could not produce a driver's license, and the insurance card that Child provided had expired. Deputy Marshall then directed Child to pull into a parking lot in order to further investigate the deputy's suspicions that Child was driving under the influence.

At the secondary location, Deputy Marshall had Child perform three field sobriety tests. At this point in the investigation, Child told Deputy Marshall that he had been involved in a motorcycle accident a "couple of days" earlier and that he had been prescribed Lortab in the emergency room. Child also admitted to Deputy Marshall that he had smoked "two bowls" of marijuana, the last being thirty minutes before arriving at the checkpoint and that he had also taken a muscle relaxer and Lortab. After witnessing Child's performance on the field sobriety tests, Deputy Marshall concluded that it was unsafe for Child to drive, and the deputy arrested him. Deputy Marshall testified that at the time of the arrest, he informed Child of the Implied Consent Act, NMSA 1978, § 66-8-107 (1993). The testimony of Deputy Marshall regarding advising Child of his *Miranda* rights is developed in Point I where we consider this issue.

After being arrested, Child was taken to a hospital where his blood was drawn

3

by a nurse pursuant to Child's consent under the Implied Consent Act. The results of Child's blood test showed that he had marijuana and Darvon, a prescription pain medication, in his system. Child was then taken to the New Mexico State Police Office where Officer Micah Doering conducted the DRE evaluation. This evaluation of Child was digitally recorded in audio, and the facts regarding the recording are set forth in Points I and II because the handling of the recording is relevant to these two issues. During the evaluation, Child made several statements to Officer Doering, including that he was taking two prescription medications—a muscle relaxer and Lortab—and that he had smoked marijuana earlier in the day and about thirty minutes before getting to the DWI checkpoint. After performing the DRE evaluation on Child, Officer Doering concluded that Child was impaired to the point where he should not be operating a motor vehicle.

On May 4, 2009, Child filed two separate pretrial motions. The motion to suppress sought to suppress all statements made by Child to law enforcement officers based on the failure to read Child his *Miranda* rights as required by *State v. Javier M.*, 2001-NMSC-030, ¶ 1, 131 N.M. 1, 33 P.3d 1. The motion to exclude sought to keep out the DRE "testimony and reports of . . . Officer . . . Doering [and to] and to exclude any mention of Officer Doering's report or investigation" because the DRE evaluation had been recorded, but it was not disclosed to the defense. The State filed responses

4

to both motions. The district court held a hearing on these motions on May 13, 2009, and the court indicated that it would grant the motions. Before the order memorializing the court's decision was entered, the State submitted a motion to reconsider because "[u]ntil recently, it was unknown to the State, including Officer Doering, whether any other electronic recording of the DRE [evaluation] existed," but a video recording of Officer Doering's DRE evaluation with Child was now available. The State also asserted that the video of the DRE evaluation indicates that Child was given *Miranda* warnings and that Child understood those rights. After discussing the content of the video with the prosecution and the defense, the district court reconsidered its earlier ruling on the motion to suppress and ruled that Child's statements would be admissible. At trial, the jury found Child guilty of all three charges. On appeal, Child only challenges his DWI conviction.

**DISCUSSION**

**1.    Motion to Suppress**

We understand Child's argument to contain two parts. First, it appears that Child's basic position is that the district court erred in not suppressing Child's statements to Deputy Marshall and Officer Doering on the night of his arrest because he was not properly advised of his *Miranda* rights. *See Javier M.*, 2001-NMSC-030, ¶ 1. "In reviewing a trial court's denial of a motion to suppress, we observe the

5

distinction between factual determinations[,] which are subject to a substantial evidence standard of review and application of law to the facts[,] which is subject to de novo review." *State v. Nieto*, 2000-NMSC-031, ¶ 19, 129 N.M. 688, 12 P.3d 442 (second alteration in original) (internal quotation marks and citation omitted). "We view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. "The ultimate determination of whether a valid waiver of [*Miranda*] rights has occurred, however, is a question of law [that] we review de novo." *State v. Martinez*, 1999-NMSC-018, ¶ 15, 127 N.M. 207, 979 P.2d 718 (internal quotation marks and citation omitted).

As we explained, there were two hearings. At the first hearing, Deputy Marshall testified that he had no specific recollection of advising Child of his constitutional rights, but he stated that he believed that he probably did. He also admitted that during a prior interview with Child's counsel, he stated that he never *Mirandized* Child. Officer Doering testified that although he had no personal knowledge of whether Deputy Marshall *Mirandized* Child, he did note on his report that Deputy Marshall had *Mirandized* Child. Officer Doering also testified that there is a standard procedure wherein the person conducting the DRE evaluation confirms

with the arresting officer that *Miranda* warnings have been given to a defendant and that the officer conducting the DRE evaluation then gives the *Miranda* warnings to the defendant again to ensure that the defendant is aware of his or her rights. Officer Doering testified that he did advise Child of his constitutional rights including the right to have a parent or guardian present and that Child indicated that he had been advised of those rights and agreed to proceed with the DRE evaluation. Officer Doering referred to the digitally recorded tape of the DRE evaluation. He initially believed that this recording had been purged from the police system after 90 days pursuant to departmental policy. Officer Doering also offered testimony that Child understood his rights and never indicated that he wanted an attorney, parent, guardians, or a friend present.

The district court was not convinced that Child had ever been fully advised of this rights, and ruled that Child's statements would be suppressed and that Officer Doering could not testify about the DRE. The day after the first hearing, Officer Doering discovered a separate video recording of the DRE evaluation. The State moved to reconsider. At this second hearing–a hearing on the motion to reconsider—the district court listened to arguments from the prosecution and the defense regarding what could be heard as to whether Child was given his *Miranda* rights or not. The prosecutor acknowledged that the recording was difficult to hear,

but that Officer Doering could be heard confirming with Deputy Marshall that he had given Child his *Miranda* warnings. The prosecutor said that Child can be heard acknowledging that he had been told his rights and that he understood them. The prosecutor also stated that on the recording Officer Doering can be heard specifically advising Child of his right to remain silent and that the prosecutor was "pretty sure" that she heard Officer Doering tell Child that anything he said could be used against him. The defense counsel argued that although he could hear a reference to constitutional rights—specifically the right to remain silent—on the recording, the defense counsel could not hear "every word spoken" and did not hear every individual right stated to Child and, therefore, the video was not sufficient to establish that Child was given *Miranda* warnings. After discussing the DRE evaluation recording with the prosecution and the defense, the district court concluded that it had sufficient evidence to determine that Deputy Marshall had advised Child of his constitutional rights, that Child confirmed that he was advised of his rights and understood them, and that Officer Doering had again advised Child of his rights. The district court denied Child's motion to suppress. We agree with the district court that there was sufficient evidence for the court to conclude that Child had been advised of his rights as required under *Javier M.*, 2001-NMSC-030, ¶ 1.

Child further argues that Child's admission on video that he had been read his

8

rights and understood them does not support a finding that Child "knowingly, intelligently, and voluntarily waived his constitutional rights." The State contends that this argument was not preserved. Although we agree that the focus of the argument was on whether Child ever received *Miranda* warnings with primary reliance on *Javier M.*, Child's attorney did argue the differences between a child's understanding and that of an adult. However, Child's attorney never cited to NMSA 1978, Section 32A-2-14(D) or (E) (2009), nor did he actually argue that Child never "knowingly, intelligently, and voluntarily waived his constitutional rights." Even though there may be a question about preservation, we will address this issue. Child maintains that "there are no facts in evidence to support a knowing, voluntary or intelligent waiver" of his constitutional rights. Our review of the record shows otherwise.

The district court did note that Child was asked if he understood his rights:

We now have a tape. We have a tape in which they talk about the fact that [Child] was *Mirandized* . . . I don't like changing my ruling, but the fact is now we have a videotape that . . . indicates that [they] went over the constitutional rights, that [Child] was advised of [his] *Miranda* rights . . . I am convinced that he was advised of his *Miranda* rights and actually even, again, with this . . . tape was kind of advised again, "Did you go over them, did you understand them?"

The record shows that Child was seventeen years old, thus he was old enough to comprehend the *Miranda* warning and the consequences of waiving his rights. *See*

9

*Martinez*, 1999-NMSC-018, ¶ 22. Once in custody, Child was advised of his *Miranda* rights, and he was advised a second time before the DRE evaluation at which time he was also advised that he could have his parents or a friend present. He chose not to ask for others to be present. There was testimony that Child was cooperative. The stop occurred after midnight, and after Child's blood was drawn, he was escorted to the police station around 2:00 a.m. to undergo a DRE evaluation. Although the hour was late, there was no evidence that the interaction between Child and the police officers was overly lengthy or that Child experienced duress or coercion at the time he was talking to the deputy or the officer.

To evaluate whether Child knowingly, intelligently, and voluntarily waived his constitutional rights, "we look to the totality of circumstances, giving particular emphasis to the factors listed in Section 32A-2-14(E)." *Martinez*, 1999-NMSC-018, ¶ 18. Our review of the facts in this case support a conclusion that Child did understand his rights as determined by the district court, and that his waiver was a valid one.

**2.     Motion to Exclude**

Next, Child argues that the district court abused its discretion in denying his motion to exclude testimony about the DRE evaluation including Child's statements made during the evaluation and the results as a sanction for the destruction of the

recording of the evaluation. As we have explained, the audio version of Officer Doering's DRE evaluation of Child was digitally recorded and this particular recording was purged from the police system 90 days later pursuant to departmental policy. In an oral ruling, the district court granted Child's motion to exclude DRE testimony and evaluation results.

After the hearing, Officer Doering searched his DRE evaluation tapes and found a video recording of Child's evaluation. Officer Doering testified that he notified the prosecutor and the defense counsel within 24 hours of finding the tape and provided both sides with a copy about a month before the trial. Based on the existence of the video recording and Child's opportunity to review it before trial, the district court reconsidered its determination and ultimately denied Child's motion.

This Court "review[s] an alleged error in the admission of evidence for an abuse of discretion." *State v. Martinez*, 2007-NMSC-025, ¶ 7, 141 N.M. 713, 160 P.3d 894. "The lower court's ruling will be disturbed on appeal only when the facts and circumstances of the case do not support [its] logic and effect." *Id.* (alteration in original) (internal quotation marks and citation omitted). "In order to find an abuse of discretion, we must conclude that the decision below was against logic and not justified by reason." *State v. Duarte*, 2007-NMCA-012, ¶ 14, 140 N.M. 930, 149 P.3d 1027 (internal quotation marks and citation omitted).

In this case, Child focuses his argument on the institutional policy of destroying relevant evidence in DWI cases. Although Child acknowledges that the video recording of the DRE was produced before trial, he contends that there was still a loss of evidence—the audio recording. He argues that the audio recording was potentially exculpatory, that it was destroyed by police officers, that it was material, and that its "unavailability was prejudicial since it prevented Child's counsel from effectively impeaching the officer's testimony as to what occurred." Child contends that it was an abuse of discretion for the court to reverse its original ruling excluding evidence regarding the DRE evaluation.

We agree that in criminal cases, "the Government plainly has the obligation to make available to the defense evidentiary material in its possession which is disclosable." *State v. Chouinard*, 96 N.M. 658, 660, 634 P.2d 680, 682 (1981) (internal quotation marks and citation omitted). We also agree that the "[d]estruction of evidence can . . . result in a denial of due process." *State v. Hill*, 2005-NMCA-143, ¶ 20, 138 N.M. 693, 125 P.3d 1175. New Mexico has adopted a three-part test to determine whether deprivation of evidence violates a criminal defendant's right to due process and requires suppression of the evidence. *Chouinard*, 96 N.M. at 661, 634 P.2d at 683. The questions to be answered under this test are: (1) did the state breach its duty to preserve the evidence or intentionally deprive the defendant of it, (2) was

12

the evidence material, and (3) did the suppression or loss of the evidence prejudice the defendant. *Id.* Although the district court originally answered the three questions in the affirmative, on reconsideration after disclosure of the video recording, the district court ruled that the DRE testimony was no longer excluded and Child's statements were no longer suppressed.

The State does not dispute the district court's finding that the destruction of the audio recording was a breach of the State's duty to disclose exculpatory evidence. The district court also found that the destruction was not a matter of bad faith, and we agree that there was substantial evidence to support this finding. The State disagrees with the court's additional finding that the evidence was material, but we need not address this issue because the district court ultimately determined that the loss of the audio recording did not prejudice Child. The court observed that the video recording, even with poor sound quality, provided independent evidence of what occurred during the DRE evaluation and thus the video recording mitigated any prejudice that might have existed based on the loss of the audio recording of the DRE evaluation. Additionally, the district court allowed Child's counsel the opportunity to cross-examine Officer Doering about the loss of the recording thereby granting one of the remedies available when the loss of evidence is discovered before trial. *Id.* at 663, 634 P.2d at 685. Based on these facts, we conclude that there was no abuse of

13

discretion in denying Child's motion to exclude, and we affirm the district court's ruling. *See Martinez*, 2007-NMSC-025, ¶ 7.

**3.     Toxicology Report**

Finally, Child argues that the district court violated Child's right to confrontation in admitting a toxicology report into evidence through an analyst other than the one who conducted the test and prepared the report. As a general rule, when a defendant argues that the admission of evidence violates the right to confront a witness, we review de novo the district court's decision to admit the evidence when the argument has been preserved. *See State v. Lopez*, 2000-NMSC-003, ¶¶ 10-12, 128 N.M. 410, 993 P.2d 727.

During the trial, the State introduced the toxicology report through the testimony of Dr. Rong-Jen Hwang after establishing that Dr. Hwang was an expert in forensic toxicology. Dr. Hwang testified as to the procedures followed in producing the toxicology report, as well as the results of Child's blood sample. The defense objected on confrontation grounds because Dr. Hwang did not prepare the report and because the analysts who prepared the report were never identified and did not appear at trial. U.S. Const. amend. VI. The district court admitted the toxicology report into evidence over defense counsel's objections.

In light of our Supreme Court's decision in *State v. Aragon*, 2010-NMSC-008,

14

147 N.M. 474, 225 P.3d 1280, we hold that it was error for the district court to admit the toxicology report into evidence without having the analyst who prepared the report available to testify. The Court in *Aragon* held that a report prepared by an analyst is "functionally identical to live, in-court testimony" and is used to "prove a fact necessary for conviction[.]" *Id.* ¶ 8 (internal quotation marks and citation omitted). The Supreme Court further stated that admitting a scientific report without the analyst who prepared it being available to testify is a violation of a defendant's right of confrontation. *Id.* ¶ 12. Given this ruling, we hold that it was error for the district court to admit the toxicology report into evidence without having the analyst who prepared it available to testify at trial. *Id.*

However, the Court in *Aragon* also held that, in that case, the erroneous admission of the scientific report was harmless error. The Court outlined three factors for determining harmless error when a constitutional right is involved.

> The factors are whether there is: (1) substantial evidence to support the conviction without reference to the improperly admitted evidence; (2) such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence will appear minuscule; and (3) no substantial conflicting evidence to discredit the [s]tate's testimony.

*Id.* ¶ 35 (internal quotation marks and citation omitted). "No one factor is determinative; rather, they are considered in conjunction with one another." *Id.* (internal quotation marks and citation omitted). An appellate court should conclude

15

that a constitutional error is harmless only when there is no reasonable possibility that it affected the verdict. *Id.*; *State v. Barr*, 2009-NMSC-024, ¶ 53, 146 N.M. 301, 210 P.3d 198. It is not the role of the appellate court to reweigh the evidence against a defendant. *Aragon*, 2010-NMSC-008, ¶ 35; *Barr*, 2009-NMSC-024, ¶ 57. Therefore, the harmless error analysis does not center on whether, in spite of the error, the right result was reached, but on whether the verdict was impacted by the error. *Aragon*, 2010-NMSC-008, ¶ 35; *Barr*, 2009-NMSC-024, ¶ 57. Weighing these factors, a reviewing court must decide if it can conclude that there was no reasonable possibility that an error did not contribute to the jury's verdict. *See Aragon*, 2010-NMSC-008, ¶ 35.

In the case before us, there was substantial evidence of Child's impairment introduced at trial aside from the toxicology report. *See* § 66-8-102(B). Deputy Marshall testified that Child had bloodshot, watery eyes, that he detected the odor of marijuana coming from Child's vehicle, and that Child did not do well on the field sobriety tests. Officer Doering also testified that after performing the DRE evaluation of Child, the officer believed that Child was impaired to the point where he should not be operating a motor vehicle. In addition, we have Child's confession to Deputy Marshall that he had smoked "two bowls" of marijuana approximately thirty minutes before arriving at the checkpoint and that he had also taken a muscle relaxer and

Lortab, as well as Child's confession to Officer Doering that he had taken two prescription medications—a muscle relaxer and Lortab—and that he had smoked marijuana earlier in the day and about thirty minutes before getting to the DWI checkpoint. Finally, while Dr. Hwang's expert testimony was based in part on the toxicology report that should have been excluded, he also based his conclusion on DRE protocol and on his interpretation of Officer Doering's report on the DRE evaluation, Deputy Marshall's report on the field sobriety tests, and Deputy Marshall's observations of Child at the DWI checkpoint.

We hold that the evidence described above amounts to such a disproportionate volume of permissible evidence that, in comparison, the amount of improper evidence admitted appears so minuscule that there is no reasonable possibility that it could have affected the verdict. *See Aragon*, 2010-NMSC-008, ¶ 36; *Barr*, 2009-NMSC-024, ¶ 59. Deputy Marshall and Officer Doering's observations of Child's impairment, as well as Child's confessions of having smoked marijuana and taken a couple of different prescription drugs made the toxicology report inconsequential. *See Barr*, 2009-NMSC-024, ¶ 59.

Finally, there was no substantial conflicting evidence to discredit the State's testimony regarding Child's impairment. *See id.* ¶ 60. Child unsuccessfully tried to suppress and exclude evidence of his intoxication, but at no time during the trial did

Child contest Deputy Marshall or Officer Doering's observations of Child's impairment. Therefore, there was no substantial evidence presented to conflict with the testimony presented by the State. *See id.*

After examining the three factors outlined in *Aragon* and *Barr*, we hold that the admission of the toxicology report was harmless error. Because we determine that the admission was harmless error, we uphold Child's conviction for DWI.

**IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Chief Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**LINDA M. VANZI, Judge**