The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

Opinion Number:

Filing Date: July 15, 2025

**NO. S-1-SC-39897**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**DEMESIA PADILLA,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Cindy M. Mercer, District Judge**

Raúl Torrez, Attorney General
James W. Grayson, Chief Deputy Attorney General
Walter Hart, Assistant Attorney General
Santa Fe, NM

for Petitioner

Kennedy, Hernandez & Harrison, PC
Paul J. Kennedy
Jessica M. Hernandez
Elizabeth A. Harrison
Albuquerque, NM

for Respondent

**OPINION**

**THOMSON, Chief Justice.**

**I.      INTRODUCTION**

{1}      In June 2018, five and a half years into a six-year statute of limitations, the State filed two second-degree embezzlement-related charges in a criminal information against Demesia Padilla, former Secretary of the New Mexico Taxation and Revenue Department, in district court in the First Judicial District. *See* NMSA 1978, § 30-16-8 (2007); NMSA 1978, § 30-45-3 (2006). Almost a year later and after the statute of limitations had expired, both charges were dismissed without prejudice for improper venue. When the charges were refiled in district court in the Thirteenth Judicial District, the court rejected Padilla's argument that the indictment was time-barred. The Court of Appeals denied interlocutory review, and a jury convicted Padilla of both charges. Padilla appealed, and the Court of Appeals, in a split decision, reversed. *State v. Padilla*, 2023-NMCA-047, 534 P.3d 223.

{2}      We now review whether the Court of Appeals correctly vacated Padilla's second-degree felony convictions as barred by the running of the statute of limitations. NMSA 1978, § 30-1-8(A) (2009, amended 2022) (establishing a six-year statute of limitations for second-degree felonies). Ultimately, the question before us is whether a timely filed criminal information dismissed without prejudice

tolls the statute of limitations such that the State may refile the charges after the limitations period has passed. We conclude it does not. We hold that the tolling provision at issue, NMSA 1978, Section 30-1-9 (1963) applies to second-degree felonies but that the proviso in Section 30-1-9(B)(4) denies the State the benefits of tolling under Subsection (B). Because Section 30-1-9 controls tolling for second-degree felonies and because this case does not involve a superseding indictment, the State also cannot benefit from the reasoning articulated in *State v. Martinez*, 1978-NMCA-095, 92 N.M. 291, 587 P.2d 438. Therefore, charges the State filed against Padilla after the six-year time period provided in Section 30-1-8(A) were time-barred. Accordingly, we affirm the Court of Appeals and remand to the district court with instructions to vacate Padilla's convictions.

## II.     BACKGROUND AND PROCEDURAL HISTORY

{3}      On June 29, 2018, the State charged Padilla by criminal information with two second-degree felonies in the First Judicial District Court. Padilla timely raised venue objections within ninety days of her arraignment. *See* Rule 5-601(E)(1) NMRA. On June

2

11, 2019, the First Judicial District Court granted Defendant's motion to dismiss both counts without prejudice for improper venue. The State did not appeal.[1]

{4}     On August 1, 2019, over six months after the running of the six-year limitations period, Padilla was indicted by a grand jury in Sandoval County. Relative to the June 28, 2018, criminal complaint, it was not a superseding indictment. *See Indictment, Black's Law Dictionary* (12th ed. 2024) (defining "superseding indictment" as "[a] second or later indictment that includes additional charges or corrects errors in an earlier case"). The State alleged that the felonies occurred "between December 19, 2011, and January 22, 2013." Padilla moved to dismiss the charges as time barred. The parties acknowledge that absent statutory or common law tolling, the six-year limitations period for these offenses expired on January 23, 2019. *See* Section 30-1-8(A) (establishing a six-year statute of limitations for second-degree felonies).

[1]District courts may not transfer a case for improper venue. *Jones v. N.M. State Highway Dep't*, 1979-NMSC-033, ¶ 6, 92 N.M. 671, 593 P.2d 1074. However, had the State appealed and the case reached this Court, we would have had the authority under our writ of superintending control to transfer the case to the appropriate jurisdiction. *Marsh v. State*, 1980-NMSC-129, ¶ 2, 95 N.M. 224, 620 P.2d 878 (transferring a case the Court heard on appeal from the Court of Appeals so that it could be tried in a more appropriate jurisdiction); *Albuquerque Gas & Elec. Co. v. Curtis*, 1939-NMSC-024, 43 N.M. 234, 89 P.2d 615 ("[T]he power of superintending control is an extraordinary power. It is hampered by no specific rules or means for its exercise." (internal quotation marks and citation omitted)).

{5}     Because there was no dispute the charges were refiled beyond the limitations period in Section 30-1-8(A), the argument at the preliminary hearing centered on tolling. The district court agreed with the State's argument to adopt common law tolling and cited *Martinez*, 1978-NMCA-095, as allowing common law tolling principles to apply where statutory tolling provisions do not. The district court approved an application for interlocutory review, which the Court of Appeals denied.

{6}     Padilla was convicted of both offenses and appealed, arguing in the Court of Appeals that the Legislature intended for Section 30-1-9(B) to govern second-degree felonies and that the statutory five-year cap between the alleged crime and the time of filing for the benefits of tolling denied the State the provision's benefit. *Padilla*, 2023-NMCA-047, ¶ 4. The State maintained that Section 30-1-9(B) did not apply because (1) the prior information was never quashed or dismissed as required under Subsection (B)(3),[2] (2) the five-year cap set out in Section 30-1-9(B) excludes second-degree felonies (and, for that matter, all felonies under New Mexico law) from the ambit of the statute, and (3) the running of the statute of limitations was suspended upon the filing of the original indictment, even though the filing was made in the wrong county.

---

[2]The State did not raise this same argument before this Court, and we, therefore, do not consider it.

{7}     A divided Court of Appeals rejected the State's argument that Section 30-1-9 is inapplicable to second-degree felonies by virtue of the five-year cap. Instead, the majority concluded that the five-year cap constituted "a limitation on the benefit of tolling once it has been determined that the tolling provision applies and not [a] criteri[on] to determine whether the tolling provision applies in the first place." *Padilla*, 2023-NMCA-047, ¶ 13 & n.8. The *Padilla* majority held that the criteria outlined in Section 30-1-9(B) "demonstrate[d Legislative intent] to limit statutory tolling to certain identified circumstances and contemplated that statutory tolling might not always be available to extend statutory limitation periods." *Id.* ¶ 13.

{8}     The *Padilla* majority distinguished *Martinez*, 1978-NMCA-095, relied upon by the district court and the dissent. The majority reasoned that the narrow question in *Martinez* was "[w]hether the timely criminal complaint that initiated the felony charges in magistrate court satisfied the statute of limitations even though the superseding felony indictment was filed in district court after the limitation period expired." *Padilla*, 2023-NMCA-047, ¶ 12. The *Padilla* majority further noted that the cases *Martinez* relied upon all involved an original and a superseding charging document without any dismissal between the two, while here, in contrast, the charges were dismissed and a separate action subsequently filed. *Id*. Finally, the majority noted that Section 30-1-9 and Section 30-1-8 were adopted at the same legislative session, and, thus, the Legislature was acutely aware

5

of the effect of the five-year cap on the benefit of tolling under Section 30-1-9(B). *Id.* ¶ 14.

{9} The *Padilla* dissent, however, identified the "crux of the dispute . . . [as] the interplay between nonstatutory tolling and our criminal tolling statute." *Id.* ¶ 20 (Duffy, J., dissenting). In this light, the dissent read the five-year provision as a criterion limiting the applicability of the tolling provision wholesale. *Id.* ¶ 23. Under that interpretation, because the statute has no effect on felony offenses with limitations periods greater than five years, the *Padilla* dissent maintained that the Legislature must have intended that the tolling provision not apply to felonies but only, as the dissent put it, to "less serious offenses." *Id.* ¶ 26. We appreciate the differing but thoughtful approaches of the Court of Appeals majority and dissent in this case and settle the question.

**III.  ANALYSIS**

{10} The tolling provision, Section 30-1-9(B), showcases the first of two issues before this Court. Does Section 30-1-9 apply to second-degree felonies, or because of the five-year cap contained in Section 30-1-9(B)(4), does it only apply to crimes with a statute of limitations that is less than five years? This is important because if Section 30-1-9(B) governs tolling for second-degree felonies, then common law tolling principles could not apply. In that vein, the State—joined by the *Padilla*

6

dissent—in presenting the second issue before the Court, contends that Section 30-1-9(B) does not govern tolling for second-degree felonies, and therefore the Court *must* look to other potential sources of tolling. *Padilla*, 2023-NMCA-047, ¶¶ 19-21, (Duffy, J., dissenting) (citing *Martinez*, 1978-NMCA-095, ¶¶ 11-12). They diverge, however, in the way alternative tolling principles apply.

{11} The *Padilla* dissent suggests importing common law (or "nonstatutory") tolling principles, which it finds in *Martinez*, 1978-NMCA-095. *See Padilla*, 2023-NMCA-047, ¶¶ 18-20 (Duffy, J., dissenting) ("The *Martinez* Court ultimately concluded that nonstatutory tolling was consistent with the Legislature's intent under the circumstances of the case, thereby establishing that Section 30-1-9 does not contain the entire universe of tolling for criminal cases in New Mexico."). The *Martinez* Court concluded that an indictment filed after the statute of limitations has run was tolled by a previously filed and still pending complaint in magistrate court. 1978-NMCA-095, ¶¶ 10-11. The *Martinez* Court explained that "the indictment was timely because the limitation period was tolled by the filing of the complaint" in magistrate court, which occurred before the statute of limitations had run. *Id*. ¶ 12. The *Padilla* dissent would have applied this same reasoning to hold "that the timely filing for the State's first complaint tolled the statute of limitations, and thus, the State had

7

approximately six months to refile the charges upon dismissal." *Padilla*, 2023-NMCA-047, ¶¶ 22, 29 (Duffy, J., dissenting).

{12} The State advances a similar argument: that the plain language of the statute of limitations for second-degree felonies, Section 30-1-8, supports tolling on its own terms without any need to rely on tolling under Section 30-1-9(B). Under the State's theory, satisfying the statute of limitations with a timely filing of the first set of charges also serves to toll the statute and extend the time for filing a second set of charges. Put simply, the State argues that as long as it filed some charges within the statute of limitations period, the statute of limitations is satisfied because the running of the limitations period is suspended at the time of filing.

{13} We address each of these arguments in turn. First, to set the proper analytical framework, we outline the relationship between statutes of limitations and mechanisms for suspending those limitations periods. We then walk through the statutory tolling provision at issue, Section 30-1-9, and the State's argument that the terms of Section 30-1-8 act independently to toll the statute of limitations once an indictment is filed. Finally, we turn to principles of common law tolling and whether such a concept exists under *Martinez*.

8

## A. Statutes of Limitations and Tolling Generally

{14} "A statute of limitations is . . . a law that bars claims after a specified period." *State v. Hill*, 2008-NMCA-117, ¶ 9, 144 N.M. 775, 192 P.3d 770 (internal quotation marks and citation omitted). For a criminal defendant, the statute of limitations is a substantive right. *See State v. Kerby*, 2007-NMSC-014, ¶ 18, 141 N.M. 413, 156 P.3d 704. Thus, we are charged to "liberally construe[]" statutes of limitations in favor of a defendant. *Id.* ¶ 13. "These statutes provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." *United States v. Marion*, 404 U.S. 307, 322 (1971). The purpose of a limitations period on criminal charges "is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions." *Toussie v. United States*, 397 U.S. 112, 114 (1970). On its own, a statute of limitations is a bright-line rule. Once the period has passed, "[a] person *shall not* be prosecuted, tried, or punished . . ." for the charged offense. Section 30-1-8 (emphasis added). The statute of limitations for second-degree felonies, with which Padilla was charged, is six years. *See* § 30-1-8(A).

{15} Whether by statutory or common law creation, tolling can be pivotal because where the statute of limitations has run, for an action to be viable, some mechanism

9

or exception must provide the additional time to bring charges. *See Hill*, 2008-NMCA-117, ¶ 9 (characterizing a *tolling statute* as "a law that interrupts the running of a statute of limitations in certain situations" (brackets and citation omitted)); *see also* 21 Am. Jur. 2d *Criminal Law* § 249 ("Unless the statute of limitations contains an exception or condition that will toll its operation, the running of the statute is not interrupted."). To create exceptions to strict statute of limitations periods, our Legislature enacted what is now Section 30-1-9 (1963) to suspend running (to toll) the fixed time period in which the State may initiate certain actions beyond when those actions would otherwise be time-barred. For example, under Section 30-1-9(A), if a defendant flees arrest or leaves the state, the time period for the state to prosecute that person is not calculated into the limitations period. Section 30-1-9(B), at issue here, lists several additional situations where the running of the limitations period is tolled *post-indictment*.

{16} Tolling may "mean *either* that the running of the limitations period is suspended *or* that the effect of the limitations period is defeated." *Artis v. Dist. of Columbia*, 583 U.S. 71, 93 (2018) (Gorsuch, J., dissenting). When a statute suspends the running of the limitations period for a set amount of time, this is referred to as stopping the clock. Suspension stops the running of the limitations period and later imputes the remaining time onto the end of the tolling period. *Id*. at 79-80.

10

{17}    Under the first meaning of tolling, when an original indictment is filed, the clock is stopped for the duration of that proceeding. Where the original case is dismissed without prejudice, the time that remained under the statute of limitations as of the original filing provides a window for bringing a second action. Under the second meaning, the original charge is properly filed and never dismissed. This scenario often implicates a superseding indictment: that is, "a second indictment issued in the absence of a dismissal of the first." *United States v. Rojas-Contreras*, 474 U.S. 231, 237 (1985) (Blackmun, J., concurring in the judgment). In these cases, courts employ *tolling* to describe the stopping of the limitations clock for those offenses because the statute of limitations provision has been *satisfied*. *See Martinez*, 1978-NMCA-095, ¶ 12 ("Upon the filing of the indictment prior to dismissal of the complaint, the indictment was timely because the limitation period was tolled by the filing of the complaint."); *see also United States v. Viera*, 931 F. Supp. 1224, 1229 (M.D. Pa. 1996) ("[W]hile the filing of the indictment does toll the limitations period it does so only for the purposes of allowing the government to proceed with the prosecution."), *abrogated on other grounds by United States v. Midgley*, 142 F.3d 174, 176 (3d Cir. 1998); *United States v. Panebianco*, 543 F.2d 447, 454 (2d Cir. 1976) ("A superseding indictment containing substantially the same charge as the superseded indictment should have no effect on the initial tolling of the statute of

11

limitations so long as the defendant is not significantly prejudiced by the delay.").

The Northern District of Illinois described the paradigm well:

> [T]he "tolling" of limitations is a term most often used to express the concept of interrupting the continuous flow of the passage of time, to be resumed afresh once the tolling ends. In that sense, if (say) four years of a five-year limitations period had elapsed before the tolling event occurred, once the tolling has stopped another year would still remain before the statute of limitations would bar bringing the criminal charge—and that would be so whether the tolling period had been a month, a year or even ten years. But that meaning of "tolling," even if the one most frequently employed, is not the only possible usage of the term. "Tolling" can also describe the concept in which the return of an indictment renders timely any restatement of its charges—the familiar "superseding" indictment—while the earlier indictment is pending.

*United States v. Lytle*, 658 F. Supp. 1321, 1324 (N.D. Ill. 1987) (footnote omitted).

These clear distinctions, well described by the *Lytle* court, are critical to understanding how New Mexico's tolling statute operates.

**B.     Section 30-1-9 Governs Tolling for Second-Degree Felonies**

{18}     Both the State and the *Padilla* dissent assert that second-degree felonies fall outside the ambit of Section 30-1-9 to advance their positions. The *Padilla* dissent advocates for common law tolling principles where it perceives a gap in Section 30-1-9. The State, on the other hand, argues that it satisfied the statute of limitations provided in Section 30-1-8 by filing its initial information within the six-year window. Neither view is reconcilable with the plain meaning of Section 30-1-9, which includes second-degree felonies within its ambit but excludes them from the

12

benefit of tolling. *Quynh Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 37, 147 N.M. 583, 227 P.3d 73 (observing that the plain meaning rule recognizes that "when a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation") (brackets, internal quotation marks, and citation omitted).

## 1.      Standard of review

{19}     Because the facts are not in dispute and this is a matter of statutory interpretation, our review is de novo. *See State v. Collier*, 2013-NMSC-015, ¶ 29, 301 P.3d 370 ("When facts relevant to a statute of limitations issue are not in dispute, the Court reviews de novo whether the [lower] court correctly applied the law to the undisputed facts." (internal quotation marks and citation omitted)). Thus, criminal statutes of limitations "are 'to be liberally construed in favor of a defendant because their purpose is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of [the sanctioned] acts.'" *State v. Morales*, 2010-NMSC-026, ¶ 13, 148 N.M. 305, 236 P.3d 24 (quoting *Kerby*, 2007-NMSC-014, ¶ 13).

## 2.      Section 30-1-9 applies to second-degree felonies and excludes the State from the benefits of tolling in this case

{20}     Section 30-1-9(B) presents a series of six independent clauses joined by semi-colons setting forth when tolling applies. Section 30-1-9(B) reads:

13

When

(1)    an indictment, information or complaint is lost, mislaid or destroyed;

(2)    the judgment is arrested;

(3)    the indictment, information or complaint is quashed, for any defect or reason; or

(4)    the prosecution is dismissed because of variance between the allegations of the indictment, information or complaint and the evidence; *and* a new indictment, information or complaint is thereafter presented, the time elapsing between the preferring of the first indictment, information or complaint and the subsequent indictment, information or complaint shall not be included in computing the period limited for the prosecution of the crime last charged; *provided that* the crime last charged is based upon and grows out of the same transaction upon which the original indictment, information or complaint was founded, *and the subsequent indictment, information or complaint is brought within five years from the date of the alleged commission of the original crime*.

(Emphasis added.)

{21}    The plain language of Section 30-1-9(B) is naturally read as establishing a condition that has a single exception, *viz.*, the five-year proviso. The condition sets out the required characteristics for Section 30-1-9(B) to apply: when one of the four events—enumerated clauses (1) through (4)—occurs *and* "a new indictment, information or complaint is thereafter presented." Where the condition is met, "the time elapsing between the preferring of the first indictment, information or complaint and the subsequent indictment, information or complaint shall not be

14

included in computing the period limited for the prosecution of the crime last charged." *Id.*

{22}     The third clause of Section 30-1-9(B)(4) is a proviso[3] limiting the benefit of the tolling clause. It reads: "*provided that* the crime last charged is based upon and grows out of the same transaction upon which the original indictment, information or complaint was founded, *and the subsequent indictment, information or complaint is brought within five years from the date of the alleged commission of the original crime.*" (Emphasis added.) This third clause establishes two exceptions to the general rule, one of which is the five-year cap at issue here.

{23}     In this case, the original information was quashed due to improper venue so the general rule (or condition) of the tolling provision is applied. *See* 30-1-9(B)(3) ("[T]he indictment, information or complaint is quashed, for any defect or reason."). Then, the State filed a "new" indictment—albeit after the passing of the statutory limitations period—so the second clause of Section 30-1-9(B)(4) is also satisfied to

---

[3]A proviso is a clause that begins with "provided." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 154 (Thomson/West 2012). Provisos have become disfavored by legal drafting authorities because they can create a condition or exception and, in some cases, may even mean "an addition to" a condition. *Id.* As stated herein, we read the proviso as creating a condition or an exception to the benefit of tolling, even where the other conditions of Section 30-1-9 are satisfied, that operates to exclude second-degree felonies from those benefits.

15

trigger the benefit of tolling. *See* 30-1-9(B)(4) (requiring that "a new indictment, information or complaint is thereafter presented, [where] the time elapsing between the preferring of the first indictment, information or complaint and the subsequent indictment, information or complaint shall not be included in computing the period limited for the prosecution of the crime last charged"). Thus far the statute's plain wording aligns with the State's position; the original information was quashed and the subsequent complaint was timely because we may not count the time between the first and second indictment. Section 30-1-9(B)(3)-(4) ("[*When* a] complaint is quashed . . . and a new indictment . . . is thereafter presented, the time" period between the initiation of the first and second actions "shall not be included in" the running of the statute of limitations.

{24}    The Section 30-1-9(B)(4) proviso and how it interacts with the statute of limitations in Section 30-1-8(A) complicates matters. The Legislature afforded second-degree felonies a generous six-year statute of limitations, Section 30-1-8(A), which is greater than the tolling provision's applicability cap of five-years set forth in the proviso. The State and the *Padilla* dissent read the proviso as establishing a condition, an additional criterion, for Section 30-1-8(A) to apply.

{25}    We disagree and conclude that the proviso of Section 30-1-9(B)(4) operates "to except some particular case or situation from a general principle or enactment."

16

*Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 24, 125 N.M. 401, 962 P.2d 1236; *see also State v. Snyder*, 1924-NMSC-051, ¶ 20, 30 N.M. 40, 227 P. 613 (noting that exception and proviso "are usually used interchangeably and without any separate distinctive signification"). Because of the mandatory language present in each of the four initial conditions, Section 30-1-9(B) establishes a general principle or rule to allow tolling under that statute. Indictments for second-degree felonies, of course, may satisfy those initial conditions, and are, therefore, included within the ambit of Section 30-1-9(B). The proviso then takes the form of an exception disallowing the benefit of tolling for those actions that do not meet its terms, including second-degree felonies, which carry a statute of limitations that exceeds the proviso's five-year cap. *Bounds v. State Workmen's Comp. Comm'r*, 153 W. Va. 670, 675-76 (1970) (interpreting a provision where "'shall'" established a general rule and "the statute, by the proviso, creates an exception to the general rule"). Our interpretation gives effect to all of Section 30-1-9's provisions, and harmonizes Subsection (B) with Subsection (A), which plainly applies to all crimes, including second-degree felonies.

{26}    In lieu of a plain meaning analysis of Section 30-1-9, the *Padilla* dissent focuses its interpretive efforts on the 1963 amendment, which added the tolling provision's five-year cap. The 1963 amendment was part of a years-long effort

initiated in 1957 to completely overhaul the criminal code. *See* Henry Weihofen, *The Proposed New Mexico Criminal Code*, 1 Nat. Res. J. 123, 123-24 (1961). Prior to the amendment, the tolling provision read:

> When an indictment is lost, mislaid, or destroyed, or when the judgment is arrested, or the indictment quashed, for any defect therein, or for the reason that it was not found by a grand jury regularly organized, or because it charged no offense, or for any other cause, or when the prosecution is dismissed because of a variance between the allegations of the indictment and the evidence, and a new indictment is thereafter presented, the time elapsing between the preferring of the first charge or indictment and the subsequent indictment shall not be included in computing the period limited for the prosecution of the offense last charged, provided that the offense last charged is based upon, or grows out of, the same transaction upon which the first indictment was founded.

1912 N.M. Laws, ch. 42, § 2; *see* NMSA 1953, § 41-9-3 (1963) (repealing the 1912 enactment). The original and the amended statute are strikingly similar except, of course, for the new five-year proviso.

{27} There is no dispute that the prior statute governed all felonies. From a statutory interpretation perspective, the fact that the Legislature retained much of the same language, including the word *shall*, implies that there was an intent to continue to govern all offenses. The *Padilla* dissent, however, reads into the 1963 amendment a policy argument that the addition of the five-year cap illustrates legislative intent to "preclude indefinite tolling" and "rein in the statutory tolling period." *Padilla*, 2023-NMCA-047, ¶¶ 25, 28 (Duffy, J., dissenting). Because the language of Section 30-

1-9 is clear, we need not look further to divine legislative intent, but we take this opportunity to address the analysis undertaken by the *Padilla* dissent. *See State v. Torres*, 2006-NMCA-106, ¶ 8, 140 N.M. 230, 141 P.3d 1284 ("When a statute makes sense as written, we will not read in language that is not there.").

{28} To begin, the 1963 changes to the criminal code which remain unamended and in effect in the code today actually included a specific provision allowing for indefinite tolling in circumstances when, "after any crime has been committed," a defendant flees or is not a resident of the state. Section 30-1-9(A) ("If after any crime has been committed the defendant shall conceal himself, or shall flee from or go out of the state, the prosecution for such crime may be commenced within the time prescribed in Section [30-]1-8, after the defendant ceases to conceal himself or returns to the state. No period shall be included in the time of limitation when the party charged with any crime is not usually and publicly a resident within the state.") Because "crime" is inclusive of any forbidden act or omission, NMSA 1978, § 30-1-4 (1963), a petty misdemeanor that carries a one-year limitations period under Section 30-1-8(D), could be indefinitely tolled under Section 30-1-9(A) if a defendant flees or leaves the state. Further, the chances of an action being tolled because of a change of residency or leaving the state appear considerably greater

19

than under Section 30-1-9(B)(3), where an indictment must be quashed and reinstated.

{29} The dissent suggests the addition of the five-year provision evinces "a [legislative] intent to narrow the application of the tolling statute." *Padilla*, 2023-NMCA-047, ¶ 25 (Duffy, J., dissenting). If that is true, and the Legislature thereby intended to exclude more serious felony offenses from the ambit of the tolling provision, then we are left with the following unsound proposition: courts should apply a common law tolling principle to a situation where a statute once applied but no longer does because the Legislature expressly amended the provision to preclude its application. The dissent's interpretation frustrates legislative intent.

{30} The six-year statute of limitations established under the 1963 criminal code provides a different lens through which to view the tolling provision's five-year cap. During the same 1963 legislative session that amended the tolling provision and adopted the crime classification scheme, a new statute of limitations regime was also enacted. *Compare* NMSA 1953, Section 40A-1-9(G) (1963) (providing a statute of limitations for "revenue" crimes of three years), *with* Section 30-1-8(A) (providing a six-year limitations period for second-degree felonies). Under the 1963 code, the State would have been required to bring this suit within three years "from the time the crime was committed." NMSA 1953, Section 40A-1-8 (1963). The Model Penal

20

Code (MPC) recommended the same. MPC § 1.06(2)(b) (1962) (requiring that "prosecution for any other [than a first-degree] felony must be commenced within three years after it is committed").

{31} If the 1963 Legislature had wanted to restrict the reach of the provision to certain types of offenses, the new criminal code provided the ideal opportunity to do so. In addition to the changes to the tolling provision, the 1963 criminal code saw an overhaul in its terms, influenced heavily by the MPC. The new criminal code adopted the MPC's classifications of crimes: "felonies, misdemeanors and petty misdemeanors." NMSA 1978, § 30-1-5 (1963); MPC § 1.04(1) (1962). Rather than expressly limit the application to misdemeanors or petty misdemeanors, the 1963 Legislature retained the prior tolling provision's broad language, referring only to crimes, which still includes "an act or omission forbidden by law and for which, upon conviction, a sentence of either death, imprisonment or a fine is authorized." Section 30-1-4. Therefore, we conclude that Section 30-1-9 applies to second degree felonies and excludes them from the benefits of tolling under Section 30-1-9(B)(4).

**C.    The State's Argument That It Satisfied the Statute of Limitations by Filing the First Action Before the Statute Had Run Fails**

{32} The State advances another variant of a tolling principle that has more to do with satisfying the statute of limitations than actual tolling. As the State would have it, all that is required is that the State file an indictment within the statutory period,

21

and once that is done the limitations statute at issue is satisfied. To support this concept, the State repeatedly cites a Second Circuit Court of Appeals opinion, *United States v. Grady*, 544 F.2d 598 (2d Cir. 1976), for the proposition that "[o]nce an indictment is brought, the statute of limitations is tolled as to the charges contained in that indictment." *Id*. at 601. *Grady* is the State's keystone in forming the substance and core of its position that an otherwise time-barred action should proceed and is also the substance and core of other cases the State relies on including *Martinez*, 1978-NMCA-095, and two out-of-state cases. *See State v. Strand*, 674 P.2d 109 (Utah 1983); *State v. Stewart*, 438 A.2d 671 (Vt. 1981). The main deficiency in the State's analysis, and it is significant, is that in *Grady*, the court was reviewing whether the statute of limitations barred a *superseding indictment*. That determination was ultimately based on the *Grady* Court's interpretation of 18 U.S.C. § 3288, critically, that only statutory tolling is permissible in the federal system. *United States v. Rafoi*, 59 F.4th 718, 736 (5th Cir. 2023), *reh'g granted, opinion withdrawn sub nom.* ("In the federal criminal system, tolling of the statute of limitations must be established 'by law;' there are no common-law or equitable-tolling provisions for the filing of an indictment."). Indeed, the analysis in *Grady* is limited to federal *statutory* tolling and only as it applies to *superseding indictments*. Ultimately, the State asks us to create a *common law* tolling rule in New Mexico

22

derived from a federal case that exclusively interprets federal *statutory* tolling.[4] We decline to do so.

{33}    The State's most persuasive argument lies in the cases from Utah and Vermont, which allow common law tolling principles in a criminal context similar to here. *See Strand*, 674 P.2d at 112; *Stewart*, 438 A.2d at 673. However, there are two distinguishing features worth noting. First, both of the State Supreme Courts involved rely heavily on a misapplication of *Grady*. The Courts accept *Grady* for the proposition that a timely filed charge tolls an action such that a limitations period may be suspended to allow the initiation of a time-barred action after the original charges are dismissed. *Stewart*, 438 A.2d at 675 ("We agree with [the *Grady* Court's] analysis and feel that it applies exactly to the present case."); *Strand*, 674

---

[4]Unfortunately, through either inartful or surreptitious use of ellipses, the State omits the true focus of the *Grady* Court's analysis in a block quotation provided in the State's brief in chief. The pertinent portion of the quotation reads, with the omitted words italicized: "The statute begins to run again on those charges only if the indictment is dismissed, and the Government must then re-indict before the statute runs out *or within six months, whichever is later,* in order not to be time-barred." *Grady*, 544 F.2d at 601. "[W]ithin six months" is a direct reference to Section 3288, which provides a six-month period in which to bring suit if the original action is dismissed after the limitations period. *See id.* at 601 n.3. The *Grady* Court is merely expounding on the two post-dismissal possibilities under that statute. Contrary to the State's argument, it is "plain that the [*Grady*] Court was not establishing a 'tolling' principle beyond 18 U.S.C. § 3288." *United States v. Bortnovsky*, 683 F. Supp. 449, 452 (S.D.N.Y. 1988).

P.2d at 112 (noting the *Stewart* Court's reliance on *Grady*). This understanding is in sharp contrast to federal courts' view of Grady as holding the opposite. *United States v. Bortnovsky*, 683 F. Supp. 449, 451 (S.D.N.Y. 1988) ("[T]he [*Grady*] Court was not establishing a 'tolling' principle beyond 18 U.S.C. § 3288."); *Lytle*, 658 F. Supp. at 1323 (noting that when determining whether statutory tolling applies, "the date of the offense is compared with the date of the new indictment, and if the intervening time gap exceeds [the limitations period], the charged offense is barred by limitations").

{34}     Finally, the State's reliance on *Grady* reveals the greatest weakness in its position: it is out of touch with our statutory scheme here in New Mexico. If we were to accept the State's argument that filing an indictment alone tolls the statute of limitations, there would be no purpose in the language of Section 30-1-9(B). *See Katz v. N.M. Dep't of Human Servs.*, 1981-NMSC-012, ¶ 18, 95 N.M. 530, 624 P.2d 39 ("A statute must be construed so that no part of the statute is rendered surplusage or superfluous."). The conditions set forth in Section 30-1-9(B) would never come to pass. Once an indictment is filed in a timely manner, the statute of limitations would in the State's view be satisfied, full-stop. Automatic tolling or suspension would appear to render Section 30-1-9(A)'s indefinite tolling for fleeing and out-of-state residency, superfluous. A criminal information would immediately toll the

proceedings such that the terms of Section 30-1-9(A) would not affect the running of the limitations period. Such an approach would also undercut the legislative intent of the tolling provision by allowing for tolling in circumstances beyond the specified instances identified by our Legislature.

**D.** ***Martinez* Does Not Provide a Foundation for Adopting Common Law Tolling Principles**

{35} The Court of Appeals opinion in *Martinez*, 1978-NMCA-095, does not apply to the facts of this case and cannot be read so broadly as to support adopting common law tolling principles in criminal prosecutions where tolling is not provided by statute. As the *Padilla* majority noted, the question in *Martinez* was "[w]hether the timely criminal complaint that initiated the felony charges in magistrate court satisfied the statute of limitation even though the superseding felony indictment was filed in district court after the limitation period expired." 2023-NMCA-047, ¶ 12. This question is different than the one before this Court where the initial complaint was dismissed. The *Martinez* Court employed a theory of tolling that is closer to a continuation or relation back theory than it is to common law tolling. *See* 1978-NMCA-095, ¶¶ 10-12; *Snow v. Warren Power & Mach., Inc.*, 2015-NMSC-026, ¶ 19, 354 P.3d 1285 ("'Whenever the claim . . . asserted in the amended pleading arose out of the conduct . . . set forth . . . in the original pleading, the amendment relates back to the date of the original pleading.'"(quoting Rule 1-015(C)(1) NMRA)). In

25

*Martinez*, the prosecution timely filed the initial complaint with the magistrate court. 1978-NMCA-095, ¶ 2. While the original matter was pending for preliminary hearing, the prosecution filed a subsequent indictment with the district court. The timing of second filing was beyond the statute of limitations. *Id*.

{36} The *Martinez* Court began its analysis with the tolling provision, acknowledging that it "does not expressly apply to the voluntary dismissal of [a] complaint." *Id*. ¶ 16 (relying on Section 40A-1-9 (1963), now compiled as Section 30-1-9). The court then looked to New Mexico's statute of limitations. The statute, the court noted, "does not distinguish between complaint, indictment, or information." *Id*. ¶ 18 (referring to Section 40A-1-8 (1963), amended and now compiled as Section 30-1-8). While a felony may be initiated by complaint, there must be an indictment or information for prosecution to proceed. N.M. Const., art. II, § 14. The court concluded that because the statute allows for a complaint to satisfy the statute of limitations, "the time of filing the superseding indictment or information should not control the limitation question." *Martinez*, 1978-NMCA-095, ¶ 18.

{37} The facts of *Martinez* are substantially different from those here and are more aligned with the facts of *Grady*. *Martinez* involved a superseding indictment while this case involves a dismissed complaint refiled after the limitations period had run.

Satisfying a statute of limitations that allows the filing of a subsequent indictment is markedly different from allowing the initiation of an otherwise time-barred action. In situations where a superseding indictment is at issue, the analysis is less about whether the clock is stopped and more about the relevance of the subsequent filing to the pending charges that were timely filed. Thus, the application of common law tolling principles is not necessary. A superseding indictment requires no tolling of the time period within which to initiate a suit. Rather, the subsequent charges are merely a continuation of the original charge. The *Martinez* Court acknowledged that the "'continuation' consideration [was] valid" but decided the issue under tolling because that is how limitations questions are "usually discussed" in criminal cases. *Martinez*, 1978-NMCA-095, ¶ 11. As was the case in *Grady*, it appears that the *Martinez* Court's use of the word "tolling" did not invoke common law principles where additional time was added to the limitations period, and signifies only that the statute of limitations was satisfied so the clock was not at issue for already pending charges. On this point, we credit the Court of Appeals' recent conclusion that the "holding in *Martinez* . . . rests on the operation of criminal procedure" rather than on a common law concept of tolling. *State v. Sandoval*, 2025-NMCA-002, ¶¶ 13-15, 561 P.3d 1102, 1108, *cert. denied* (S-1-SC-40687, Dec. 26, 2024). Accordingly, we

do not view *Martinez* as providing a basis to create or adopt any common law tolling principle, and we decline to do so.

## IV.   CONCLUSION

{38}   In summary, we affirm the Court of Appeals and remand to the district court with instructions to vacate Padilla's convictions for the time-barred charges.

{39}   **IT IS SO ORDERED.**

_____

**DAVID K. THOMSON, Chief Justice**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Justice**

_____

**C. SHANNON BACON, Justice**

_____

**BRIANA H. ZAMORA, Justice**

_____

**DANIEL A. BRYANT, Judge**
**Sitting by designation**